JbpWnoeC

```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x
 3  UNITED STATES OF AMERICA,
 4              v.                             19 Cr. 830 (AT)
 5  TOVA NOEL and MICHAEL THOMAS,
 6              Defendants.
 7                                             Conference
    ------------------------------x
 8
                                               New York, N.Y.
 9                                             November 25, 2019
                                               12:00 p.m.
10
11  Before:
12
                         HON. ANALISA TORRES,
13
                                            District Judge
14
                              APPEARANCES
15
    GEOFFREY S. BERMAN
16       United States Attorney for the
         Southern District of New York
17  BY:  REBEKAH A. DONALESKI
         NICOLAS T. ROOS
18       Assistant United States Attorneys
19  FOY & SEPLOWITZ LLC
         Attorneys for Defendant Noel
20  BY:  JASON E. FOY
21  MONTEL FIGGINS
         Attorney for Defendant Thomas
22
23
24
25
```

JbpWnoeC

1       THE COURT:  Good afternoon.
2       We're here in the matter of United States v. Tova Noel
3  and Michael Thomas.
4       Would you make your appearances, please.
5       MS. DONALESKI:  Good afternoon, your Honor.  Rebekah
6  Donaleski and Nicolas Roos for the government.
7       MR. FOY:  My name is Jason Foy, attorney for Ms. Noel.
8  Good afternoon, your Honor.
9       THE DEFENDANT:  Good afternoon, your Honor.
10      MR. FIGGINS:  Good afternoon, your Honor.  Montel
11 Figgins on behalf of Michael Thomas, who is presently in court,
12 standing to my left.
13      THE COURT:  Please be seated.
14      Has the prosecutor finished delivering discovery to
15 the defendants?
16      MS. DONALESKI:  No, your Honor.
17      The defendants self-surrendered last Tuesday, on
18 November 19.  They were presented and arraigned that day.  We
19 notified defense counsel we would begin producing discovery
20 once a protective order is in place, and we will do so on a
21 rolling basis.
22      THE COURT:  When do you expect to be finished?
23      MS. DONALESKI:  We anticipate that we'll need a month
24 to complete production of the discovery currently in our
25 possession.

1    THE COURT:  When do you expect the protective order to
2    be in place?
3    MS. DONALESKI:  Your Honor, we'll provide a draft to
4    defense counsel within the next day, and then depending on how
5    long it takes for them to comment on it and the parties to
6    reach a resolution, we'll provide it to the Court as
7    expeditiously as possible, so it's my hope that that can happen
8    within a week.
9    THE COURT:  All right.  By the end of December,
10   discovery should have been produced.  Is that correct?
11   MS. DONALESKI:  That's fine, your Honor.
12   THE COURT:  It's not voluminous, is it?
13   MS. DONALESKI:  Your Honor, it will consist of
14   hundreds of hours of video recording, so in that aspect it will
15   be voluminous, but the paper records, the bank records will not
16   be voluminous.
17   THE COURT:  All right.  It doesn't seem that you would
18   need more than a month to review the discovery so that by the
19   end of January, you should have made decisions as to whether
20   you're going to be filing motions.  Correct?
21   MR. FIGGINS:  Your Honor, if I may?
22   I also know that there's an ongoing inspector
23   general's report.  I don't have any idea as to the time frame,
24   if and when that's going to be completed.  I do believe that
25   there would be some pertinent information, relevant information

1   in that report, so if we could get some -- if they have any
2   idea as to when that's going to conclude, I do believe that
3   that may have some impact in terms of information that we
4   desire to have as well as I do believe that we're also going to
5   be subpoenaing some documents as well.  But I don't think we
6   would need more than the end of January, presumably, to have an
7   idea to convey to the Court where we are with respect to moving
8   forward with motions.
9           MS. DONALESKI:  Your Honor, we'll provide the
10  discovery in our possession to the defendants by the end of
11  December.  I don't know of a basis to hold up a criminal case
12  based on a DOJ inspector general report, and I don't have a
13  time line of when that will be completed.
14          MR. FOY:  Your Honor, I agree that by the end of
15  January we should be in a position to assess what motions, if
16  any, will be necessary.  We'll also be in a position to
17  determine whether there are any issues regard to discovery or
18  additional information at that point.
19          MR. FIGGINS:  And your Honor --
20          THE COURT:  One moment, please.
21          You'll return to court on January 30 at 11 a.m. --
22  that will be a control date -- and you'll let me know whether
23  you expect to file motions.
24          Now, with respect to a trial date, April 20.
25          MR. FIGGINS:  That's fine for us.

1     MS. DONALESKI: That's fine for the government, your
2 Honor.
3     THE COURT: How long do you expect the trial to last?
4     MR. FOY: Your Honor, I would say it's fine. I mean,
5 as it looks right now, but based on some of the things I'm
6 anticipating, I don't know if that would be enough time and
7 maybe we want to wait and see, because I need to see the
8 discovery before I can say definitively that, yes, April 20 is
9 an appropriate date. But for now certainly that would be fair.
10     THE COURT: We're told that the discovery consists of
11 video and documents. I don't understand why you can't
12 anticipate whether you can go forward on the 20th.
13     MR. FOY: Because I haven't seen what those documents
14 are and what impact it might have on the defense of the case as
15 well as my thoughts on some additional documents that may go
16 beyond what they believe Rule 16 requires. I can imagine a
17 situation where we feel that there's more to be provided than
18 what the government provides. We're not there yet, so I'm not
19 suggesting that it's definitely going to be an issue, but I did
20 want to alert the Court early on of the possibility. But once
21 I get the discovery, I'll be in a position to say more
22 affirmatively.
23     THE COURT: What else are you expecting?
24     MR. FOY: You mean as far as discovery?
25     THE COURT: You're talking in vague terms about

1    something else coming up, and I'd like to know what that is.
2             MR. FOY:  Well, your Honor, based on our view of the
3    case, I believe there are outside circumstances that are
4    driving this prosecution that may impact certain information
5    that's available to us in the regular discovery.
6             It's hard for me to say without seeing anything, so
7    right now it's just kind of in my mind, and I don't want to
8    mislead the Court to suggest it's all going to be finished in
9    time for April 20.  It may be, and that may be fine, but it's
10   hard for me to say having not received or reviewed the
11   discovery.  I've only seen the indictment.
12            I'm just alerting the Court.  I'm not saying we can't
13   do it, but I don't want to not say it when it's something that
14   could potentially be an issue.  I'm not saying we're trying to
15   hold it up or slow down the pace unnecessarily, but I can see
16   getting information that may impact on the defense in
17   particular, *Brady* material in particular.
18            THE COURT:  *Brady* material?
19            MR. FOY:  Correct, but it's hard to say specifically
20   without seeing the discovery.
21            THE COURT:  All right.  You have not persuaded me.
22   I'm setting the trial for April 20.
23            How long do you expect the trial to go?
24            MS. DONALESKI:  Approximately a week, your Honor, for
25   the government's case.

1          MR. FIGGINS:  Your Honor, I would think it would
2  probably be about five days on our case.
3          And your Honor, I did want to ask the Court or we
4  would like to at least get some type of idea with respect to
5  the status of the inspector general's report.  I do think that
6  it's beyond relevant; it's an investigation into what happened
7  here.  There's going to be multiple details of information and
8  interviews and statements and things of that nature regarding
9  this particular case, so on and so forth.  So I would ask at
10 least the Court to see if we can get a time frame from the
11 government if that report is going to be imminently due or what
12 type of time frame we're looking at, because I do believe there
13 are going to be a lot of relevant facts in that report, that we
14 would need that information.  And then we would need time to
15 then maybe even investigate based on some of that information.
16         THE COURT:  Does the government know anything about
17 that?
18         MS. DONALESKI:  Your Honor, I don't.  And I'll just
19 clarify that to the extent counsel's asking for a summary of
20 the results of the criminal investigation, obviously we'll be
21 turning over in discovery all of the underlying results of the
22 criminal investigation.  So I'm a little puzzled as to what
23 defense counsel is saying that he needs.  I don't have a time
24 frame on the inspector general report, but the government will
25 produce to the defense all of the relevant discovery materials

in this matter, which includes the Rule 16 materials relevant to the criminal charges that have been brought against the defendants.

MR. FIGGINS:  Your Honor, to be more specific, one of the issues here is going to be the conditions and the supervision and the policies that were upheld and advanced by the Bureau of Prisons.  That is what the inspector general's report is investigating.  That's very important information that's relevant to this case and relevant to the defense.  I'm not saying we have to hold up our case forever, but we should at least get some type of idea as to the status of that report and when it's going to come out or when they're going to complete the actual report because I believe that there's going to be a lot of information that may be relevant to our defense, and it may not be specifically just about this particular investigation.

There's been multiple information in the media now with respect to testimony by the head of the Bureau of Prisons, information released by the U.S. Attorney himself regarding this investigation with respect to this case, so I believe that we will need that information.  If we're hearing that those people are making statements about that report with respect to this case, clearly there's going to be information and potentially statements and other information that we may need. So I think it's important that we at least try to get an idea

of when that report may be completed.

THE COURT: I'm putting the matter on for trial on the 20th of April. It's a firm date, and I am giving you two weeks for trial.

Are there any further applications?

MS. DONALESKI: The government moves to exclude time between today's date and April 20, 2020, in order to allow the defendants to review discovery and prepare for trial.

MR. FOY: Yes, I do have another application, your Honor.

As I alerted the Court prior to today's court proceedings, I wanted to revisit the issue of the release conditions for Ms. Noel at this time.

On November 19, we appeared before the magistrate court. The government and Ms. Noel had an agreement with regards to the bail package. After our interview with pretrial services, they added additional conditions that were not a part of the original agreement. Of the additional conditions, one of them was travel restrictions.

One of the permissible areas at the time that was stated on the record was the Eastern District of Pennsylvania. Turns out that it should be the Middle District of Pennsylvania instead of the eastern, so I'd like that to be corrected. But the second issue, which is really the main subject of this application, is with regards to the surrender of her firearms,

1    which Ms. Noel has already complied with.

2                During the proceedings before the magistrate court, I
3    presented arguments in favor of her ability to keep her
4    firearm.  I'm asking for this Court to reconsider that decision
5    and provide an individualized assessment of whether that
6    condition is appropriate under the circumstances of this case.

7                Your Honor, this case involves allegations of
8    nonviolent criminal conduct.  I do not believe that there's a
9    controversy of whether she's a flight risk or danger to the
10   community.  What has been said to me with regards to why the
11   application for the firearm has been made by pretrial services
12   is to make them more comfortable so when they come to the home
13   there's not a firearm in the home.

14               I do appreciate the fact that pretrial services needs
15   to be safe, and I don't deny that.  However, when it comes to
16   infringing upon her Second Amendment right to possess her
17   firearm that she has legally, that's personal to her, I also
18   would like to make one correction in the record from my
19   previous presentation, because I indicated to the Court at that
20   time that she possessed it legally and that she just has it for
21   the home.

22               Well, it turns out she does have credentials to
23   actually carry her firearm in public as it relates to her job.
24   I suspect that that could change if something happened with her
25   job as a result of these proceedings, but that wouldn't change

1  her ability to actually possess her firearm should her job
2  status change, meaning there may become a change in her ability
3  to carry it publicly because of a change of job situation, but
4  it won't impact her constitutional right to actually bear arms.
5        Under 3142, the Court should consider the least
6  restrictive methods, in this case, I think, address the safety
7  issue being raised by pretrial services.
8        If you look at Ms. Noel's history and character, she
9  doesn't have a prior criminal record.  She has no history of
10 violence or bad conduct that might indicate that she is a
11 physical threat, that she would use her firearm against another
12 unwarrantedly.
13       The pretrial services report was done by the person
14 who's going to supervise her.  I've had an opportunity to speak
15 to pretrial services about this application, that I would be
16 making this application, and fortunately, having worked with
17 the pretrial services officer, he respectfully disagreed with
18 my position and mentioned to me that one of the concerns is
19 what happens if I come to the home and the gun is out?  That's
20 a problem.
21       Well, it could be a problem, I suppose, but it's not
22 like a dog who has its own will and may go bite someone.  In
23 fact, I submit to the Court that if my client had a dog that
24 wasn't friendly to strangers, that one of the remedies we would
25 say is when they come from pretrial services, you have to put

1  the dog away.  What I'm suggesting to your Honor in the least
2  restrictive manner is that we can make sure that if anyone from
3  pretrial services comes to the home, that she will secure the
4  gun away so that it's not out, since that seems to be their
5  concern.
6        She doesn't have any ill will towards the court staff
7  or anyone a part of this process.  She understands what she
8  needs to do.  There is no actual, credible, competent threat
9  supported by evidence to suggest that at this time her
10 constitutional right to possess her weapon should be infringed
11 at this time.
12       I suppose there could come a time where that could
13 change, but when we take it now, without an individual
14 assessment of her particulars, her background, the specific
15 circumstances of the case, then it gives the impression as if
16 the conclusion's foregone that she should be -- meaning in this
17 case -- a felon deprived of her firearm.  She's not.  She
18 remains innocent as we sit here today, and the fact that she's
19 here is disappointing, but we're here, so we have to deal with
20 it.
21       All I'm asking for is fair consideration in an
22 individualized way.  Any concern that your Honor has about her
23 possessing a firearm, I'd welcome you to address it with me so
24 I have an opportunity to directly speak to your concerns.
25            THE COURT:  I'll hear from the government.

1      MS. DONALESKI:  Your Honor, with respect to modifying
2 the travel restrictions, we have no objection to including her
3 travel restriction to the Middle District of Pennsylvania.
4      With respect to the firearm, defense counsel raised
5 this in front of Judge Netburn last week, who had the
6 opportunity to consult with pretrial services.  She denied this
7 request, as your Honor should do.
8      We respectfully submit it is due to the safety
9 concerns of pretrial services that the defendant should not be
10 permitted to possess her firearm.  The pretrial services
11 officers have to go into the defendant's home, including at
12 unscheduled visits, and due to their safety concerns with
13 having a defendant who has access to a firearm and they may not
14 know where the firearm is in the home, it's entirely reasonable
15 for pretrial services to say as a policy defendants have to
16 surrender their firearms.
17      This is done in every case, your Honor, including law
18 enforcement officers who are on pretrial services supervision.
19 Defendants are required to give their firearms back or to
20 surrender their firearms simply for the safety of the pretrial
21 services officers who are going into their homes.  And given
22 that safety concern, we believe that it is appropriate, as
23 Judge Netburn found, for that to be a condition of her release.
24      THE COURT:  The removal of the firearm is a
25 commonsense safety measure.  The application is denied.

1           Are there any further applications?

2           MR. FIGGINS:  Yes, your Honor.

3           With respect to Mr. Thomas, last week, we asked for a
4  week to get two additional cosigners.  I would just ask the
5  Court to give us another seven days.  I've submitted the
6  information to the U.S. Attorney's Office, but they still need
7  to conduct their interview.  I just don't want there to be any
8  issues with respect to having it completed by tomorrow, so I
9  would just ask the Court to extend it another seven days with
10 respect to getting those signers and getting it approved.

11          MS. DONALESKI:  We have no objection to that, your
12 Honor.

13          THE COURT:  All right.  That deadline is extended by a
14 week.  And I certainly have no objection to the Middle District
15 of Pennsylvania being included in those areas where Ms. Noel is
16 permitted to travel.

17          Is there anything further?

18          MS. DONALESKI:  We'll just request a ruling on our
19 application to exclude time, your Honor.

20          THE COURT:  Yes.  The application is granted.  Time is
21 excluded.

22          Is that without objection?

23          MR. FOY:  That is without objection, your Honor.

24          MR. FIGGINS:  That's fine, your Honor.

25          THE COURT:  Time is excluded under the Speedy Trial

JbpWnoeC

1   Act until April 20, 2020.  I find that the ends of justice
2   served by excluding such time outweigh the interests of the
3   public and the defendants in a speedy trial because this will
4   allow time for the prosecution to produce discovery, for the
5   defense to consider it, to decide whether to prepare motions,
6   and for the parties to discuss a possible disposition.
7            The defendants' bail status shall remain the same.
8            The matter is adjourned.
9            (Adjourned)